### In the Matter of Sandra Elaine STRANGE, SS # 258–82–9918, Debtor.

**Bankruptcy No. 287–00581.**

United States Bankruptcy Court,
S.D. Georgia,
Brunswick Division.

March 16, 1988.

William S. Orange, III, Brunswick, Ga., for debtor.

Jack H. Usher, Atty., Office of U.S. Trustee, Savannah, Ga., for movant.

## ORDER ON MOTION TO DISMISS

LAMAR W. DAVIS, Jr., Bankruptcy Judge.

The United States Trustee filed a Motion to Dismiss this Chapter 7 case pursuant to 11 U.S.C. Section 707(b) which provides:

"After notice and a hearing, the court, on its own motion or on a motion by the United States Trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor."

After a review of the petition and schedules filed by the debtor, together with consideration of the briefs of the parties and applicable authorities I make the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1) Debtor, an employee of the Glynn County Board of Education, filed this Chapter 7 case on December 17, 1987. She disclosed gross income for 1986 of $25,500.00. Her net monthly income was $1,500.00. During 1987 she also received a $1,000.00 tax refund from the Internal Revenue Service.

2) Her only secured creditor is Badcock Furniture with a balance of $600.00 and a monthly payment of $180.00.

3) She listed unsecured debts of $4,944.00, payable to nine separate creditors.

4) She owns no real estate or automobile. Her scheduled personal property consisted of only furniture, clothing, jewelry and kitchen items.

5) From her net pay of $1,540.00 (including child support for her 13 year old son) she showed monthly expenses of $1,540.00 leaving no excess income. However, included in her monthly expenses were $180.00 in secured payments for a debt which will be paid within four months of the filing of her case, $400.00 for food for two persons, $70.00 for laundry and cleaning, $250.00 for medical expenses and $110.00 for transportation and automobile insurance.

6) All of Debtor's unsecured debt was apparently incurred for consumer goods with the exception of a medical bill which constitutes less than 10% of the total debt.

### CONCLUSIONS OF LAW

Debtor's counsel urges this Court to adopt a rule that ability to pay debt should not be a factor in deciding the question of whether granting relief under Chapter 7 to Debtor would constitute a substantial abuse. Debtor's position is supported by the legislative history to the 1978 Bankruptcy Reform Act which contains the following statement:

"The section does not contemplate, however, that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal. To permit dismissal on that ground would be to enact a nonuniform mandatory chapter 13, in lieu of the remedy of bankruptcy."

H.Rep. No. 95–595, 95th Cong. 1st Sess. 380 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6336. This report, however, refers only to Section 707(a) which permits dismissal "for cause". At the time of this statement of legislative history, Section 707(b) was not part of the Code. It was added in 1984 and amended in 1986.

The United States Trustee contends that the Debtor's ability to pay is a factor in determining whether granting Chapter 7 relief would be a substantial abuse as contemplated by Code Section 707(b). The United States Trustee argues that its position is supported by floor statements made at the time of its enactment which indicate that 707(b) "was added to Chapter 7 in response to concerns that some debtors who could pay their creditors might resort to Chapter 7 to avoid their obligations. 4 *Collier on Bankruptcy*, ¶ 707.4 n. 4 at 707–12 (15th ed. 1987). While reference to floor statements to glean legislative intent is not without its perils, there can be little

doubt that the enactment of Section 707(b) in 1984 and the procedural strengthening of it in 1986 was a legislative reaction to the widespread perception that the option of resorting to Chapter 7 relief was becoming too commonplace by debtors who had no demonstrable need for relief or inability to meet all or a significant portion of their financial obligations. See *Brietowitz, New Developments in Consumer Bankruptcies: Chapter 7 Dismissal on the Basis of "Substantial Abuse"*, 59 Am.Bankr.L.J. 327, 340–347 (1985). There are a number of bankruptcy cases holding that ability to pay is a major factor in determining whether a Chapter 7 case constitutes a substantial abuse. See, *In re Kress*, 57 B.R. 874 (Bankr.D.N.D.1985) (Debtor with $90,000 in income could pay unsecured debt of $37,-000 in just over three years if budget were reduced to a reasonable level). *In re Grant*, 51 B.R. 385 (Bankr.N.D.Ohio 1985). (Debtors with $65,000 annual income could repay 68% of unsecured debt of $65,000 in a five year plan by reducing their standard of living). *In re Walton*, 69 B.R. 150, 17 C.B.C.2d 124 (E.D.Mo.1986). (District Court affirmed a finding of substantial abuse with respect to a debtor with $1,700 monthly income, $22,000 in unsecured debt and $500 per month in disposable income). *In re Bell*, 56 B.R. 637, (Bankr.E.D.Mich. 1986). (The primary if not exclusive factor in determining substantial abuse is ability to pay. There are ample remedies in the Code for all other forms of abuse).

Admittedly, the debtors in some of those cases enjoyed much higher levels of income than Mrs. Strange does. However, their ratio of debt to income was much higher as well. It should be noted that Debtor enjoys a middle-class income, significantly higher than a substantial number of debtors who successfully pursue relief under Chapter 13 in this District. She has apparent stability in her employment. Her budget of monthly expenses, frankly, seems excessive in some respects. For example, $250.00 per month for medical expenses for an employee who presumably has medical insurance and $70.00 per month for laundry and cleaning appear to be overstated.

However, 11 U.S.C. Section 707(b) creates a presumption that she is entitled to relief under Chapter 7. Therefore, the burden is on the moving party to prove that her expenses are overstated or that her income is understated. As to these two items, while I suspect that burden could have been carried, it was not. On the other hand she claims $50.00 per month for auto insurance but does not own a car, according to the schedules. She received a tax refund during 1987 of $1,000.00 which demonstrates clearly that an additional $80.00 per month in net income is hers. And, as demonstrated by the United States Trustee's brief, her net income after all expenses will increase by an additional $180.00 per month when her secured debt is paid off in April, 1988. This leaves at least $260.00 per month and perhaps $310.00 per month in income to pay her unsecured creditors $4,944.00, a task that can be accomplished, with or without use of Chapter 13 relief, in less than 24 months.

Mrs. Strange, to her credit, does not appear to have been irresponsible in her financial dealings with others prior to bankruptcy and has not abused them in any pejorative sense of that word in those dealings or in the filing of this case. The focus of Section 707(b), however, is whether the granting of relief to her under Chapter 7 by this court would be a substantial abuse. Based on her ability to pay and the financial loss that others would suffer if relief were granted, I conclude that it would be such an abuse.

Based on the foregoing analysis, I conclude that:

1) Debtor's debts are primarily consumer debt within the meaning of 11 U.S.C. Section 101(7).

2) Debtor has sufficient earnings, after deduction of all reasonable living expenses, to repay all her debts within a two year period and no extraordinary factors to justify the granting of a Chapter 7 discharge exist, such as loss of work, high medical expenses, uninsured loss of realty or personalty, and the like.

3) Granting relief under Chapter 7 would constitute a substantial abuse of the purpose for which the Bankruptcy Code exists, i.e., to grant a "fresh start" to honest, unfortunate debtors whose financial state is such that they cannot reasonably be expected to satisfy their financial obligations.

Accordingly, this Chapter 7 case is hereby dismissed.